FILED

2024 Jun-10  PM 05:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

## In the United States District Court for the
## Northern District of Alabama, Southern Division

| | |
|---|---|
| **SMATrealestate, LLC,**<br>**East West Homes, LLC, and**<br>**Earline's Homes, LLC,**<br>  *Plaintiffs,*<br><br>v.<br><br>**Constitution Credit, LLC**<br>**Constitution CR LLC**<br>**REO Lend I LLC and**<br>**Ricardo Sims,**<br>  *Defendants.* | 2:24-CV-00630<br><br>JURY DEMAND |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs SMATrealestate, LLC, East West Homes, LLC, and Earline's Homes, LLC file this Complaint against Defendants Constitution Credit, LLC, Constitution CR LLC, REO Lend I LLC, and Ricardo Sims.

# JURISDICTION

1)    This Court has jurisdiction as a result of the diversity of the parties and the amount in controversy exceeding $75,000 pursuant to 28 U.S.C. § 1332.

## PARTIES

2)      Plaintiff SMATrealestate, LLC ("SRE") is a Limited Liability Company formed in Alabama, whose principal place of business is in Jefferson County, Alabama.

3)      Plaintiff East West Homes, LLC ("East West") is a Limited Liability Company formed in Alabama, whose principal place of business is in Jefferson County, Alabama.

4)      Plaintiff Earline's Homes, LLC ("Earline's Homes") is a Limited Liability Company formed in Alabama whose principal place of business is in Jefferson County, Alabama.

5)      Defendant Constitution Credit, LLC ("Constitution") is a Limited Liability Company formed in Connecticut registered to do business in Alabama.

6)      Defendant Constitution CR LLC is an adjacent Limited Liability Company to Constitution above and is listed on some of the lending documents. Constitution CR LLC's exact role is undetermined.

7)      Defendant REO Lend I LLC is a Limited Liability Company formed in Connecticut.

8)    Defendant Ricardo Sims ("Sims") is an individual resident of Boca Raton, Florida.

## RELEVANT FACTS

9)    Jeremy Head and Mervet Taha operate a number of business entities that they use for the purposes of acquiring, renovating, and selling residential properties.

10)    Of the entities that they use in this business, SMATrealestate, LLC, East West Homes, LLC, and Earline's Homes, LLC are at issue in this proceeding.

11)    Beginning as early as November 2021, Head and Taha began working with Constitution for the purposes of acquiring financing for residential rental properties.

12)    From November 2021 through 2023, Head and Taha acquired and referred dozens of loans with Constitution for their residential property acquisition business.

13)    Over this same period, Head and Taha communicated extensively and directly with Constitution's President, Ricardo Sims, often via text message.

14)     The properties at issue in this case involve those located at 316 Cross Ridge
Road, 12 4th Avenue Southwest, 640 Maupas Avenue, and 7727 Rugby Avenue, as
more fully described below (each a "Property" and together the "Properties").

15)     In 2023, relations between Head and Taha, on the one hand, and Sims, on the
other, as well as indirectly through their various entities, started to degrade as
communications from Sims and, by extension, Constitution became increasingly
infrequent and inconsistent.

16)     Towards the end of 2023, Head and Taha attempted to resolve and close their
accounts and mortgages regarding the Properties with Constitution by requesting
payoff statements of what their businesses owed Constitution.

17)     These communications were often directed to Ricardo Sims via email, phone
call, and text message.

18)     Despite receiving written requests for payoff statements, Constitution failed
to respond to requests in a timely manner and provided inaccurate information
regarding the payoff process.

19)     As a result of Constitution's delay Head and Taha lost opportunities to
refinance and a willing and able buyer for the Cross Ridge property.

20)     On finally issuing payoff statements, Constitution erroneously or fraudulently added expenses and fees that were not permitted under the respective mortgage agreements.

21)     Constitution also assessed fees that were barred by Alabama law.

22)     The result of these erroneous and fraudulent inflated fees, Head's and Taha's companies were unable to satisfy the mortgages because they far exceeded the offers they received.

23)     On January 25, 2024, Sims formed REO Lend I LLC by filing a certificate of organization with the Secretary of the State of Connecticut.

24)     Sims intended to use REO Lend I LLC, which he owned completely, in order to take possession and ownership of the Properties.

25)     On February 20, 2024, Kyle O'Hehir, co-founder of Constitution bragged on X (formerly Twitter):



**kyle o'hehir** ✔
@financeguy725

thoughts and prayers for the guy who didn't like my refinance terms

what are the odds that the bank sold me your loan 😇

7:59 PM · Feb 20, 2024 · **3,240** Views

26)     Constitution then noticed the wrongful foreclosure of three of Head and Taha's properties in Alabama and one in Georgia.

27)     The noticing of all four properties was in breach of at least one of the contracts on the Properties, as at least one of the Properties were not in default.

28)     The contract on 12 4th Avenue Southwest was not in default.

29)     The contract on 640 Maupas Avenue was not in default.

30)     The contract on 7727 Rugby Avenue was not in default.

31)     There was no agreement between the Properties that would permit foreclosing on all of the Properties as a result of a default in one of the subject contracts.

32)     In short, these Properties were not "cross-collateralized."

## A.   Constitution's Business Model

33)   Constitution is not a licensed bank.

34)   Constitution carries no license federally or in the State of Alabama that permits them to loan money in Alabama.

35)   Constitution's business model involves buying distressed debt and immediately forcing those properties into foreclosure.

36)   Additionally, Constitution profits from advertising to and loaning out money to the public at large, as if they were a licensed bank.

37)   Constitution also advertises that its accounts are "FDIC insured."

38)   Constitution is not and has never been registered or insured with the Federal Deposit Insurance Corporation.

39)   Constitution's co-founder, Kyle O'Heir, has bragged that they will buy distressed debt in non-judicial foreclosure states like Alabama and foreclose, often in as little as a week.[1]

40)   Constitution's strategy was to get the property subject to the mortgage through a deed-in-lieu-of-foreclosure, regardless of the status of the underlying

---

[1] https://www.youtube.com/watch?v=60UNSKnGOeM

loan. On February 12, 2024, Constitution's co-founder, Kyle O'Hehir posted on X
(formerly known as Twitter) asking for "straightforward alabama foreclosure
counsel."

41)     O'Hehir's post made it clear that Constitution had no intention of working
with the Plaintiffs to resolve any of the issues in Constitution's payoff statements
but instead intended to foreclose on the properties despite the clear problems in the
statements.

42)     On March 2, 2024, O'Hehir posted to X again, this time with a detailed
overview of how Constitution operates.

43)     Of particular note, O'Hehir said the following:

> **THE UNDERWRITE**
>
> Another important point: no one reads loan docs
>
> The bank provided us with their estimate of the payoff
>
> We calculated own payoff after reading through the loan docs
>
> Below is the conservative math (simplified and rounded for your
> viewing pleasure)

| Bank Payoff | 320,000 |
|---|---|
| True Payoff | 350,000 |
| Purchase Price | 310,000 |
| Collateral Value | 1,750,000 |
| LTV | 17.71% |
| Day 1 Profit | 40,000 |
| Day 1 Return | 12.90% |
| Penalty Rate | 10.75% |
| 12 Month Profit | 73,325 |
| 12 Month Return | 23.65% |

By reading the loan docs we found another 30k the bank had left on the table with their friendlier number

based on our 310k purchase price and the 1.75mm estimate of the collateral value, we are getting in at ~18% loan-to-value

44)    In this particular deal, Constitution somehow "found another" *thirty thousand dollars ($30,000.00)* that could be charged against the debtor that the original bank had somehow "left on the table."

45)    In this situation, this somehow increased the actual debt on the loan by a full *ten percent (10.00%)* overnight.

46)    This tactic is only permissible if the payoff statements included fees that were contracted to and reasonable, but the reality is that Constitution falsifies and unnecessarily incurs expenses to increase the payoffs they require of debtors in

order to first force the properties into default and then to acquire them through subversive means.

47)   Constitution uses this tactic to drive up the costs of satisfying and redeeming properties that they allege are in default in order to force the properties to sell.

48)   Constitution ratchets up the debt on the properties to such a high degree that the only reasonable option for the debtor is to sell the property to Constitution to avoid losing equity they have in the property or otherwise having a deficiency foreclosure on their credit history.

49)   Constitution usually offers a "deed in lieu of foreclosure," essentially agreeing to waive any of the principal, accrued interest, fees, or costs in exchange for the underlying asset, here the real property.

50)   Constitution only offers these deeds-in-lieu, waiving the fees and expense reimbursement that they are otherwise allegedly due, only because Constitution was not entitled to these fees and/or did not actually incur these expenses.

51)   If a property has nominal equity or is already underwater (i.e. the debt on the property exceeds what it is worth on the open market), this arbitrarily inflated debt payoff means that the only practical buyer is Constitution, as a sale to any third party would require paying off Constitution's debt first to convey clear title.

## B.   316 Cross Ridge Road

52)   On February 17, 2023, SRE entered into an agreement in which Constitution would loan SRE $622,500.00

53)   In consideration of this loan, SRE provided a mortgage to Constitution on the property located at 316 Cross Ridge Road Mountain Brook, AL 35213.

54)   As additional collateral, Head and Taha secured this agreement with their interests in SRE.

55)   This agreement is memorialized in the "Pledge and Security Agreement" (the "316 Agreement") signed by the SRE's representative Mervet Taha.

56)   The Agreement called for an interest rate of 12% to be increased to 24% upon the failure to make one full payment.

57)   In April 2023, Plaintiffs made its first payment on the Cross Ridge property and these payments, including the arbitrary and unconscionable fees, continued through October 2023. (Exhibit B).

58)   In November 2023, Constitution advised Plaintiffs "not to worry about payment" due to Constitution taking the money from other income streams related to Plaintiffs.

59)    After telling Plaintiffs not to worry about the payments, a statement that
Plaintiffs relied on, Constitution failed to respond to numerous communications
from Plaintiffs.

60)    In January 2024, Constitution informed Plaintiffs that, in spite of saying to
not worry about the loan due to the payments being taken from other sources, the
Cross Ridge loan was delinquent.

61)    On January 10, 2024, SRE requested a statement of the current loan balance,
plus any applicable fees and expenses (a "payoff statement") so that it could satisfy
the loan.

62)    On January 16, 2024, having still not received a payoff statement, SRE again
requested a payoff statement for 316 Cross Ridge Road.

63)    On January 16, 2024, Sims, on behalf of Constitution, sent a payoff
statement to SRE with a payoff amount of $721,007.68.

64)    The January 16, 2024 contained unauthorized fees and reimbursements, such
as a "payoff fee" and a "flood re-cert."

65)    The 316 Agreement did not permit Constitution to charge a "payoff fee" and
there was no basis for a "flood re-cert."

66)    On January 17, 2024, the following day, Constitution sent SRE a

forbearance offer in relation to the foreclosure sale.

67)    On February 28, 2024, Sims issued another payoff statement for 316 Cross

Ridge, this time demanding to be paid $807,300.84.

68)    In 43 days, the amount Constitution was demanding to be paid had increased

by $86,293.16.

69)    The February 28 payoff statement included a number of fraudulent charges

for which Constitution was seeking reimbursement, including but not limited to

"forced placed insurance," reimbursement for property taxes that were not yet due,

an administrative fee for paying the property taxes that were not yet due, legal

costs when Constitution had not retained a lawyer.

70)    The February 28 payoff statement included other fees and charges that were

not permitted or agreed to in the 316 Agreement.

71)    On March 21, 2024, REO Lend I LLC sent a Notice of Acceleration and

Foreclosure to SRE regarding the 316 Cross Ridge property.

72)    SRE has never had an agreement of any kind or sort with REO Lend I LLC.

73)   On March 22, 2024, the next day, SRE, through counsel, sent an email to Defendants' counsel contesting the basis for the foreclosure and the fees being assessed. SRE also requested documents supporting Constitution's expense reimbursements.

74)   At the time of filing, Defendants have refused to produce even a single invoice or receipt supporting their expense reimbursements.

75)   At the time of filing, REO Lend I LLC has refused to provide documentation showing that it is the mortgagee on the 316 Cross Ridge property.

## C.   12 4th Avenue Southwest

76)   On January 21, 2022, East West Homes, LLC executed a Note and Loan agreement for the purchase of a property located at 12 4th Avenue Southwest Birmingham, AL 35211 (the "12 4th Agreement").

77)   The 12 4th Agreement included a note for $72,000 payable over 30 years, to be due on February 1, 2052 with equal monthly payments until that date.

78)   During all times, East West has made the monthly payments as provided in the 12 4th Agreement.

79)    On November 6, 2023, East West requested a payoff statement for 12 4th Avenue Southwest, as it was considering refinancing the property.

80)    On November 8, 2023, Sims, on behalf of Constitution, issued to East West a payoff statement in the amount of $75,604.50.

81)    On February 28, 2024, Sims provided another payoff statement in the amount $98,954.37.

82)    In 112 days, the amount Constitution was demanding to be paid had been increased by $23,349.87, a 30.9% increase in the original demand.

83)    Further, the payoff statement received was filled with errors or outright fraudulent, such as but not limited to charging a 16% interest rate, despite a 6% agreed-on rate, as well "accrued late charges."

84)    The February 28 payoff statement included other fees and charges that were not permitted or agreed to in the 12 4th Agreement.

85)    On March 21, 2024, REO Lend I LLC sent a Notice of Acceleration and Foreclosure to East West regarding the 12 4th Ave property.

86)    The 12 4th Agreement has not been breached by East West in any way, as it has continued to make payments under the mortgage and note.

87)     East West has never had an agreement of any kind or sort with REO Lend I LLC.

88)     On March 22, 2024, the next day, East West, through counsel, sent an email to Defendants' counsel contesting the basis for the foreclosure and the fees being assessed. East West also requested documents supporting Constitution's expense reimbursements.

89)     At the time of filing, Defendants have refused to produce even a single invoice or receipt supporting their expense reimbursements.

90)     At the time of filing, REO Lend I LLC has refused to provide documentation showing that it is the mortgagee on the 12 4th Ave property.

### D.     640 Maupas Avenue

91)     On November 3, 2023, Earline's Homes, LLC acquired the property located at 640 Maupas Avenue, Savannah, Georgia, 31401, subject to a loan that was on that property held by Constitution ("640 Maupas").

92)     As early as November 29, 2023, Earline's Homes had requested a payoff on 640 Maupas.

93)     Earline's Homes did not receive a payoff statement on 640 Maupas until January 19, 2024, which listed the payoff as of January 31, 2024, to be $314,486.83.

94)     The significant delay between Earline's Homes's initial request for a payoff and the January 19, 2024 payoff statement resulted in the accrual of additional interest and fees, as well as the loss of opportunities for Earline's Homes to sell or refinance the property.

95)     Sims's taking of the 640 Maupas property would have not only been against the interest of Constitution, for whom he has a fiduciary duty, but would have been in furtherance of his own purposes, as Sims communicated to Plaintiffs that he wanted the 640 Maupas property as a place for his girlfriend to live.

96)     Sims then sent another payoff on February 28, 2024, which listed the total amount owed as $414,699.62, an additional $100,212.79 owed in less than 30 days, which increase the amount owed by over 31% in a month's time.

97)     Again, many of these charges were unsupported or otherwise outright fraudulent, as Constitution could provide no proof that it had incurred these expenses or was otherwise entitled to reimbursement.

98)    The February 28 payoff statement included a number of fraudulent charges

for which Constitution was seeking reimbursement, including but not limited to

"forced placed insurance," reimbursement for property taxes that were not yet due,

an administrative fee for paying the property taxes that were not yet due, legal

costs when Constitution had not retained a lawyer.

99)    The February 28 payoff statement included other fees and charges that were

not permitted or agreed to in the 640 Maupas Agreement.

100)   On March 21, 2024, REO Lend I LLC sent a Notice of Acceleration and

Foreclosure to Earline's Homes regarding the 640 Maupas property.

101)   The 640 Maupas agreement is not in default, as Earline's Homes has

continued to make payments according to the agreement.

102)   Earline's Homes has never had an agreement of any kind or sort with REO

Lend I LLC.

103)   On March 22, 2024, the next day, Earline's Homes, through counsel, sent an

email to Defendants' counsel contesting the basis for the foreclosure and the fees

being assessed. Earline's Homes also requested documents supporting

Constitution's expense reimbursements.

104)   At the time of filing, Defendants have refused to produce even a single invoice or receipt supporting their expense reimbursements.

105)   At the time of filing, REO Lend I LLC has refused to provide documentation showing that it is the mortgagee on the 640 Maupas property.

## E.   7727 Rugby Avenue

106)   On or about March 7, 2023, East West Homes LLC refinanced the property located at 7727 Rugby Avenue, Birmingham, Alabama 35206.

107)   Constitution was the lender to East West in that transaction.

108)   Like 12 4th Avenue SW, the 7727 Rugby Avenue mortgage was a 30-year note.

109)   Like 12 4th Avenue SW, East West has continued to make payments on the mortgage and note, which are not in default.

110)   On November 9, 2023, Sims, on behalf of Constitution, gave Plaintiffs an unsolicited payoff statement that represented the payoff amount to be $142,500.

111)   Despite never asking for a payoff, Sims again provided a yet another payoff statement on February 28, 2024 in an amount of $185,786.07. (Exhibit I).

112)    The February 28 payoff statement included a number of fraudulent charges

for which Constitution was seeking reimbursement, including but not limited to

"forced placed insurance," reimbursement for property taxes that were not yet due,

an administrative fee for paying the property taxes that were not yet due, legal

costs when Constitution had not retained a lawyer.

113)    The February 28 payoff statement included other fees and charges that were

not permitted or agreed to in the 7727 Rugby Agreement.

114)    Despite this property not being in default, and with no prior notice,

Constitution noticed the acceleration and foreclosure of this property on March 12,

2024.

115)    East West has never had an agreement of any kind or sort with REO Lend I

LLC.

116)    On March 22, 2024, the next day, East West, through counsel, sent an email

to Defendants' counsel contesting the basis for the foreclosure and the fees being

assessed. East West also requested documents supporting Constitution's expense

reimbursements.

117)    At the time of filing, Defendants have refused to produce even a single

invoice or receipt supporting their expense reimbursements.

118)   At the time of filing, REO Lend I LLC has refused to provide documentation

showing that it is the mortgagee on the 7727 Rugby Avenue property.


## CAUSES OF ACTION

119)   For the following Claims, Plaintiffs adopt and incorporate by reference the

allegations in the Parties and Relevant Facts sections above.


## COUNT I.      Breach of Contract

120)   Plaintiffs and Constitution had a contract between them for a security

agreement involving a loan in exchange for collateral.

121)   Constitution breached the contract by charging arbitrary fees and collecting

those fees in violation of the Agreement.

122)   As a result, Plaintiffs has suffered hundreds of thousands of dollars in

damages.

WHEREFORE, Plaintiffs demands judgment for compensatory damages, plus

interest, the costs of this action, and reasonable attorney's fees. Plaintiffs further

demands punitive damages for the Constitution's fraud in connection with this

matter.

## COUNT II.    Breach of Contract II

123)   Defendants breached the contract when it accelerated the loan and initiated foreclosure based on Plaintiffs failing to pay fraudulent invoices.

124)   Defendants have refused to provide substantiating documentation, deeds, mortgages, assignments, receipts, invoices, and other items that prove they are entitled to the reimbursement of those fees.

125)   Despite notice and objection to these fees and expenses, Defendants pressed forward with foreclosure proceedings on all four Properties, despite only one being arguably in default.

126)   As a result, Plaintiffs has suffered hundreds of thousands of dollars in damages.

WHEREFORE, Plaintiffs demands judgment for compensatory damages, plus interest, the costs of this action, and reasonable attorney's fees. Plaintiffs further demands punitive damages for the Constitution's fraud in connection with this matter.

## COUNT III.     Unjust Enrichment

127)   In the alternative, and should the contracts be found to be unenforceable,

Constitution has unjustly enriched itself by charging Plaintiffs unconscionable fees,

accepting those fees when paid, and providing no value in return for those

payments.

128)   As a result, Plaintiffs has suffered hundreds of thousands of dollars of

damages.

WHEREFORE, Plaintiffs demands judgment for compensatory damages, plus

interest, the costs of this action, and reasonable attorney's fees. Plaintiffs further

demands punitive damages for the Constitution's fraud in connection with this

matter.

## COUNT IV.     Fraudulent Misrepresentation

129)   In this case, Constitution represented the fees that it would charge Plaintiff

in the Agreement.

130)   Plaintiffs relied on the representation of the fees that would be charged and

paid the fraudulent fees out of an abundance of caution.

131)   As a result, Plaintiffs has suffered hundreds of thousands of dollars in damages.

WHEREFORE, Plaintiffs demands judgment for compensatory damages, plus interest, the costs of this action, and reasonable attorney's fees. Plaintiffs further demands punitive damages for the Constitution's fraud in connection with this matter.

## COUNT V.       Fraudulent Suppression

132)   As a party to the contract, Constitution had a duty to disclose all the fees that it would charge Plaintiffs in relation to the Agreement, but Constitution did not disclose these fees.

133)   Plaintiffs was unaware that the fees not mentioned in the agreement would be charged.

134)   As a result, Plaintiffs has suffered hundreds of thousands of dollars in damages.

WHEREFORE, Plaintiffs demands judgment for compensatory damages, plus interest, the costs of this action, and reasonable attorney's fees. Plaintiffs further demands punitive damages for the Constitution's fraud in connection with this matter.

COUNT VI.      **Usury**

135)   In Alabama, the maximum interest rate for contractual agreements at is set by statute.

136)   The Agreement set the interest rate at 12% with an increase to 24% upon a missed payment, both well above 8%.

137)   As laid out in §8-8-12(b), "The borrower of money at a usurious rate of interest shall not in any case be required to pay more than the principal sum borrowed, and if any interest has been paid, the same must be deducted from the principal and judgment entered for the balance only" Ala. Code § 8-8-12.

138)   Furthermore, usury cannot be avoided by calling the charges something else like a fee or premium.

139)   As required by the code, due to the contract being usurious, Plaintiffs' interest and fee payments should be applied to the principal of the Agreement.

WHEREFORE, Plaintiffs demands this Court to render judgment in favor of Plaintiffs and restructure the Agreement in accordance with Ala. Code § 8-8-12 by imputing all payments Plaintiffs has paid Constitution in relation to the Agreement toward the principal, including any interest or fees.

## COUNT VII.    Violation of Alabama Code § 35-10-91

140)   Ala. Code §35-10-91(a) dictates that "a person liable for payment or performance of the obligation secured by the real property described in a security instrument who makes proper notice pursuant to this section shall be entitled to receive a payoff statement." Ala. Code § 35-10-91.

141)   Plaintiffs did not receive timely payoff statements for the Properties, as described above.

142)   As a result, Plaintiffs suffered damages due to lost sellers and failure of the ability to refinance, all while Defendants continued to profit from their delay by continuing to charge interest, accrue expenses for which they sought reimbursement, and other fees.

143)   WHEREFORE, Plaintiffs demand that Defendants be found in violation of Alabama Code § 35-10-91 and award to Plaintiffs such damages as is appropriate by law.

# PRAYER FOR RELIEF

WHEREFORE, the above premises considered, Plaintiffs SMATrealestate, LLC, East West Homes, LLC, and Earline's Homes respectfully request that this Court enter judgment in their favor and against the Defendants Constitution Credit, LLC, Constitution CR LLC, REO Lend I LLC, and Ricardo Sims, jointly and severally, for the following:

1. Injunctive relief preventing the foreclosure and/or sale of the subject Properties pending review;

2. An accounting of all money alleged to be owed to Constitution by Plaintiffs, including supporting evidence;

3. Rescission of the contracts on the subject Properties;

4. Compensatory damages suffered by Plaintiffs because of Defendants' actions;

5. Statutory damages as permissible by Alabama law;

6. Punitive damages to prevent future behavior;

7. Costs;

8. Pre- and post-judgment interest; and

9. Attorney's fees.

**PLAINTIFF DEMANDS JUDGMENT BY JURY.**


Respectfully submitted,

***/s/ Joseph E. "Tripp" Watson, III***
Joseph E. "Tripp" Watson, III
tripp@watson-firm.com
Attorney for Plaintiffs


*Of Counsel*
The Watson Firm
2007 3rd Avenue North
Birmingham AL, 35203
205.545.7278
contact@watson-firm.com